ELLEN N. DAWSON, complainant-respondent; T. DARLING-
TON SMITH, MARY B. MARTIN, HELEN B. TURNER, J.
RANKIN DAVIS, attorney for Anna E. Edsel, interven-
ing complainants-respondents,

*v.*

FREEHOLD TRUST COMPANY (in liquidation) and the FREE-
HOLD TRUST COMPANY, defendants-appellants; ASBURY
PARK AND OCEAN GROVE BANK, WILLIAM H. KELLY,
as commissioner of banking and insurance of the State
of New Jersey in charge of said Freehold Trust Com-
pany and Asbury Park and Ocean Grove Bank, and
JERSEY CENTRAL POWER AND LIGHT COMPANY, defend-
ants-respondents.

[Submitted October term, 1934—Decided January 10th, 1935.]

Mr. *John J. Quinn,* for the appellants.

Mr. *Howard C. Gilmour,* for the complainant.

The opinion of the court was delivered by

HEHER, J.

The decree herein adjudges that defendant Jersey Central Power and Light Company is liable to complainants upon certain of its bonds held by them, and that it has a right of subrogation against defendants Freehold Trust Company, now in process of liquidation, and its successor, The Freehold Trust Company. It provides also for the enforcement of the asserted right of subrogation. The trust companies appeal. No challenge is interposed by the light company.

These are the essential facts: The bonds are part of an issue of the Monmouth Lighting Company (later merged with the Jersey Central Power and Light Company), and were secured by a mortgage or deed of trust made to Freehold Trust Company as trustee. In July, 1931, the light company, in the exercise of a right reserved by the contract, elected to redeem, on December 1st, 1931, all the bonds secured by the mortgage, and, by resolution, authorized and directed the trustee, as its agent, to give the notice of such election required by the mortgage, and deposited with it, on July 15th, 1931, the sum of $818,075, the amount necessary to satisfy the principal of the bonds, plus a premium of five per cent., and interest to the date of redemption.

The trustee, on the following day, deposited the check in the Asbury Park and Ocean Grove Bank, for credit in its commercial account labeled "trust account," which then had a credit in excess of $9,200. It is inferred from this latter circumstance that the account was used for the deposit of trust funds in nowise related to the redemption fund, and this may be assumed. By checks drawn upon this account, the trustee redeemed all bonds presented prior to December

24th, 1931, when the Ocean Grove Bank, the depository, suspended business, and the state banking department assumed control. All but a comparative few of the bonds had then been redeemed. On January 4th, 1932, the trustee, Freehold Trust Company, likewise suspended business. It was eventually succeeded, under a plan of reorganization, by The Freehold Trust Company, which assumed the payment of all its liabilities. The Ocean Grove Bank is not presently able to satisfy its deposit obligations; the balance of the redemption fund is beyond reach.

Respondents insist that the trustee, in thus handling the redemption fund, "mingled" it "with other moneys [trust funds] which had been deposited with it," and thereby committed a breach of trust, and that it is answerable for the resultant loss. But this claim is not well founded.

Article 8, section 4, subdivision (e) of the mortgage provides that:

"The trustee shall not be answerable for any act, default, neglect, or misconduct of any of its agents or employes, nor in any way answerable or accountable except for *bad faith*."

This court has determined, in another suit instituted by one of the unpaid bondholders, that this clause measures the trustee's liability in respect of this fund, and that the trustee, in so depositing it, was not actuated by bad faith, or lacking in ordinary diligence and care in the safeguarding of the fund. *Woodruff* v. *Freehold Trust Co., 112 N. J. Eq. 405; affirmed, 116 N. J. Eq. 597.* But respondents maintain that the question here raised, the alleged unlawful commingling of this fund and other trust moneys, was not presented or decided in that case, and that it is therefore not controlling. It is said that the deposit of the redemption fund in a trust account containing other moneys was in contravention of section 7 of chapter 174 of the laws of 1899, relating to trust companies (*4 Comp. Stat. p. 5654*), and section 1 of an act relating to banks and trust companies authorized to do a fiduciary business (*P. L. 1927 p. 102*), and that, consequently, the trustee transcended its powers, and the immunity

clause invoked is not applicable, under the authority of *Conover* v. *Guarantee Trust Co., 88 N. J. Eq. 450; affirmed, 89 N. J. Eq. 584.*

This contention we find to be without substance. Neither of the statutes invoked is applicable to the situation here presented. Section 7 of the act of 1899, *supra,* enjoins a trust company not to "mingle" money, property or securities received or held by it in a trust capacity "with the investments of the capital stock or *other moneys* or property belonging to or *deposited with such corporation,* * * *."* It is therein further provided that such trust funds, property and securities, shall not "be liable for the debts or obligations of such corporation," and that *"all other moneys and funds* belonging to or *deposited with such trust company may be used and invested in accordance with the provisions of"* *that act.* The evident purpose of this provision was to safeguard trust funds from the hazards of use by the bank trustee in the conduct of its business—a limitation that is likewise imposed by law upon the individual trustee. Its obvious design was to prevent the commingling of trust funds, which it held in its trust capacity, and not for use in the conduct of its banking business, and the deposits made under a totally different relationship and its own funds and property, which it was privileged to use, under the restrictions imposed by law, in the conduct of its business. It is reasonably clear that, under this provision, a deposit of such trust funds, in the common acceptance of the term, could not be made in the trustee bank. But any doubt as to this is dispelled by the more definite provision of the later enactment (section 1 of the act of 1927, *supra*), which ordains that a bank or trust company authorized to act in a fiduciary capacity "shall carry all funds deposited or held in trust by it *awaiting investment,* in a separate account, *and may deposit the same in such bank or trust company* and such funds shall not be used by the bank or trust company in the conduct of its business unless it shall first set aside in its trust department * * * securities approved by the commissioner of banking and insurance, * * *."*

The transaction in question is manifestly not within the

letter or spirit of these enactments. The fund was awaiting disbursement, not investment. The bonds were not to be redeemed in specie. It is evident that the parties contemplated that, in the customary mode of modern business, the trustee would be privileged to deposit the fund in another banking institution, and redeem the bonds by checks drawn upon such depository. The challenged action of the trustee was not in disregard of a duty imposed either by the trust indenture or the written authority to disburse the redemption fund. On the contrary, the authority to deposit the fund with a banking institution of "good credit," as in the case of an individual trustee, is fairly to be implied, and there was, concededly, no abuse of such authority. The depository's financial integrity was not then in question. It was reputed to be one of the strong financial institutions of the state. *Woodruff* v. *Freehold Trust Co., supra.* The deposit of the fund in an account that contained other trust funds is, under the circumstances, of no significance. It is not questioned that the account contained throughout the balance remaining after disbursements made in accordance with the contract. There is no allegation of misuse of any part of the fund. Bad faith in its handling is not alleged or proved.

The contention that, assuming the requisite power and authority, it was incumbent upon the trustee, in making the deposit, to place it, properly ear-marked, in the trust department of the depository, is untenable. Such a course would, quite conceivably, frustrate the trustee's manifest design, in the exercise of a reasonable discretion, to make for convenience in the redemption of the bonds. Moreover, the statutes invoked impose no such obligation upon the trustee. Even in the case of the deposit of trust funds awaiting investment, the provision in the act of 1927, *supra,* authorizing the deposit of such funds in the trustee bank, is permissive merely. It impliedly reserves the right to deposit such funds in another banking institution, and it imposes no restriction upon the exercise of that reserve power. Its authority, in this respect, is no less than that of an individual trustee. It results that, in the foregoing particulars, the decree should be reversed.

502

Decree reversed, *pro tanto,* and cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.